1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TREVOR NELSON, et al.,                    No.  2:24-cv-02231-DAD-CKD

12                 Plaintiffs,

13        v.                                   ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANT'S
14   FORD MOTOR COMPANY,                       MOTION TO DISMISS PLAINTIFFS' FIRST
                                               AMENDED COMPLAINT
15                 Defendant.
                                               (Doc. No. 37)
16

17        This matter is before the court on defendant's motion to dismiss plaintiffs' first amended

18   complaint ("FAC").  (Doc. No. 37.)  On January 23, 2025, the pending motions were taken under

19   submission on the papers pursuant to Local Rule 230(g).  (Doc. No. 41.)  For the reasons

20   explained below, the court will grant defendant's motion to dismiss in part.

21                                    **BACKGROUND**

22        On August 8, 2024, plaintiffs Trevor and Sarah Nelson ("the Nelson plaintiffs") filed their

23   complaint initiating this putative class action in this court.  (Doc. No. 1.)  On December 16, 2024,

24   the Nelson plaintiffs and plaintiffs Darryl Butler and Alejandro Frades filed the operative FAC.

25   (Doc. No. 33.)  In their FAC, plaintiffs allege as follows.

26   /////

27   /////

28   /////

                                            1

Each of the plaintiffs purchased new or used Ford Mustang or Lincoln MKC vehicles of certain model years that were equipped with 2.3L EcoBoost engines ("the class vehicles").[1] (Doc. No. 33 at ¶¶ 1–2.)  Specifically, the Nelson plaintiffs purchased a 2018 Ford Mustang, plaintiff Butler purchased a 2017 Lincoln MKC, and plaintiff Frades purchased a 2018 Ford Mustang.  (*Id.* at ¶¶ 13, 24, 34.)  The EcoBoost engines in the class vehicles are made of the same relevant components and materials and share the same critical design defect that causes engine coolant to leak into the engine's cylinders ("the engine defect") leading to overheating, engine fires, and engine failure.  (*Id.* at ¶¶ 3–4.)  The engine defect interferes with the "safe, comfortable, and expected use" of the class vehicles by plaintiffs and the putative class members and "exposes them to severe risk created by engine failures[.]"  (*Id.* at ¶ 8.)  Defendant "has failed to provide an effective solution" and "has not satisfactorily or effectively addressed the source of the defect," choosing instead to apply "superficial stopgap" remedies such as installing coolant sensors or recalibrating the software used by the engine.  (*Id.* at ¶ 5.)  Because defendant provides only "ineffective half measures[,]" consumers are forced to repeatedly return for service and to continue driving a vehicle which is at risk of causing damage by means of engine failure or fire.  (*Id.* at ¶ 6.)  Consumers who own vehicles which are no longer covered by the vehicle's warranty period must pay out-of-pocket for repairs, which can total thousands to "tens-of-thousands" of dollars.  (*Id.* at ¶ 7.)

In their FAC, plaintiffs describe in detail each of their alleged purchases of a class vehicle, the model and year of that vehicle, when the purchase was made, from what dealership they acquired the vehicle, in which state the purchase took place, and the research efforts they made

/////

/////

---

[1]  Plaintiffs define the "Class Vehicles" in their FAC as including 2019–2024 Ford Rangers, 2016–2024 Ford Explorers, 2021–2024 Ford Broncos, and 2020–2022 Lincoln Corsairs, as well as several other model years of Ford Mustangs and Lincoln MKCs.  (Doc. No. 33 at ¶ 2.) Plaintiffs seek to represent subclasses of persons who purchased or leased any of these class vehicles.  (*Id.* at ¶ 1.)  However, each of the named plaintiffs is alleged to be the owner of a Ford Mustang or Lincoln MKC and none of the plaintiffs purchased a Ford Ranger, Ford Explorer, Ford Bronco, or Lincoln Corsair.

prior to purchase.[2]  (*Id.* at 4–9.)  Plaintiffs also describe individual experiences with the purported Engine defect, including attempts to obtain repairs, the quoted costs for such repairs, costs actually incurred for such repairs, and the unsuccessful results of those repairs.  (*Id.*)

Plaintiffs allege that before selling the class vehicles, defendant had knowledge of the purported engine defect based on the following sources:  (1) testing, including "pre-production testing, pre-production design failure mode analysis, pre-release evaluation and testing[;]" (2) repair and warranty data; (3) replacement part sales data; (4) high failure rates and analysis in response; (5) early consumer complaints made either on public online forums or directly to defendant; (6) consumer complaints made to defendant's "authorized dealerships" and testing done in response to those complaints; (7) aggregate data from Ford dealers; and (8) other internal sources.  (*Id.* at ¶ 9.)  Plaintiffs also allege that defendant knew of the purported engine defect based on complaints collected by the National Highway Traffic Safety Administration ("NHTSA") and its own internal investigations that led to vehicle recalls in 2012, 2013, and 2017 to address problems associated with the engine defect.  (*Id.* at ¶¶ 66–82, 98–105.)

Based on the foregoing allegations, plaintiffs bring 15 causes of action in their FAC: eleven claims under applicable state consumer protection laws for breaches of express warranty, implied warranty, and for fraud brought by plaintiffs individually and on behalf of state sub-classes on a state-by-state basis, two federal breach of warranty claims brought under the Magnuson-Moss Warranty Act ("MMWA") for breaches of express and implied warranties, and nationwide claims for fraudulent concealment and unjust enrichment.  (*Id.* at 43–79.)  For example, the Nelson plaintiffs bring claims under the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.*; the Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq.*; the Song-Beverly Consumer Warranty Act, California Civil Code §§ 1790, *et seq.*; as well as claims for breach of express warranty and breach of implied warranty, all brought on behalf of themselves and on behalf of a putative California sub-

/////

---

[2]  As relevant to its analysis, below the court provides additional details regarding plaintiffs' allegations in addressing each of the arguments advanced by the parties.

1    class.  (*Id.* at 43–55.)  Additionally, the Nelson plaintiffs seek injunctive and equitable relief in

2    relation to their UCL and CLRA claims.  (*Id.* at ¶¶ 165, 177.)

3        On January 17, 2025, defendant filed the pending motion to dismiss the FAC.  (Doc. No.

4    37.)  On February 18, 2025, plaintiffs filed their opposition and on March 3, 2025, defendant filed

5    its reply thereto.  (Doc. Nos. 49, 54.)  In their opposition, plaintiffs have conceded that certain

6    claims are subject to dismissal and have withdrawn those claims.  (Doc. No. 49 at 10, 19, 25.)  As

7    outlined below, those withdrawn claims will be dismissed.

8        For the reasons explained in this order, the court will grant defendant's motion to dismiss

9    plaintiffs' FAC in part.  Specifically, the court will dismiss plaintiffs' withdrawn claims—claims

10   3, 5, 7, 10, and the putative nationwide class's claim 15—without leave to amend and will

11   dismiss plaintiffs' claims 6, 8, 9, 11, 12, 13, 14, and individual plaintiffs' claim 15 with leave to

12   amend.  The court will deny defendant's motion to dismiss as to plaintiffs' claims 1, 2, and 4.

13                              **LEGAL STANDARD**

14   **A.    Motion to Dismiss Under Rule 12(b)(6)**

15       The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

16   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

17   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

18   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

19   F.2d 696, 699 (9th Cir. 1988).  A plaintiff is required to allege "enough facts to state a claim to

20   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

21   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

22   the reasonable Inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

23   Iqbal*, 556 U.S. 662, 678 (2009).

24       In determining whether a complaint states a claim on which relief may be granted, the

25   court accepts as true the allegations in the complaint and construes the allegations in the light

26   most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

27   the court need not assume the truth of legal conclusions cast in the form of factual allegations.

28   *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

                                           4

1    require detailed factual allegations, "it demands more than an unadorned, the-defendant-

2    unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

3    mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

4    *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements

5    of a cause of action, supported by mere conclusory statements, do not suffice.").  It is

6    inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

7    defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

8    *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

9        In ruling on a motion to dismiss brought under Rule 12(b)(6), the court is permitted to

10   consider material that is properly submitted as part of the complaint, documents that are not

11   physically attached to the complaint if their authenticity is not contested and the plaintiffs'

12   complaint necessarily relies on them, and matters of public record.  *Lee v. City of Los Angeles*,

13   250 F.3d. 668, 688–89 (9th Cir. 2001).

14   **B.**    **Pleading Fraud Pursuant to Rule 9(b)**

15       A complaint alleging fraud must also satisfy heightened pleading requirements.  Fed. R.

16   Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances

17   constituting fraud or mistake.").  "Fraud can be averred by specifically alleging fraud, or by

18   alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Kearns v.*

19   *Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317

20   F.3d 1097, 1107 (9th Cir. 2003)).  "When an entire complaint, or an entire claim within a

21   complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading

22   requirements of Rule 9(b), a district court may dismiss the complaint or claim." *Vess*, 317 F.3d at

23   1107.

24       "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific

25   enough to give defendants notice of the particular misconduct . . . so that they can defend against

26   the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124

27   (citation and internal quotation marks omitted).  To satisfy the particularity standard of Rule 9(b),

28   /////

5

1   the plaintiff must allege the "'who, what, when, where, and how' of the misconduct charged." *Id.*

2   (citing *Vess*, 317 F.3d at 1106).

3                                          **DISCUSSION**

4   **A.    Equitable Jurisdiction**

5          Plaintiffs seek equitable relief in a variety of forms as to their first claim for relief brought

6   pursuant to the CLRA, their second claim brought pursuant to the UCL, and their fifteenth claim

7   asserting unjust enrichment brought pursuant to common law.  (Doc. No. 33 at ¶¶ 165, 177, 409,

8   410.)  In connection with their first claim, plaintiffs seek "an order enjoining Ford's unfair or

9   deceptive acts or practices and equitable relief under California Civil Code § 1780(e)."  (*Id.* at ¶

10  165); *see also* Cal. Civil Code § 1780(e) ("The court shall award court costs and attorney's fees to

11  a prevailing plaintiff in litigation filed pursuant to this section.").  As to their second claim,

12  plaintiffs seek restitution and an "order enjoining Ford from committing such unlawful, unfair,

13  and fraudulent business practices[.]"  (*Id.* at ¶ 172.)  Finally, in connection with their fifteenth

14  claim, plaintiffs seek disgorgement, an injunction compelling defendant to offer them vehicle

15  repairs, and an injunction preventing future deceptive advertising regarding the class vehicles.

16  (*Id.* at ¶¶ 409–10.)

17         Defendant moves to dismiss plaintiffs' claims 1, 2, and 15 because they have not

18  sufficiently alleged a lack of an adequate remedy at law.  (Doc. No. 37-1 at 31.)  Plaintiffs argue

19  that they have done so by alleging that money damages would not be an adequate remedy at law.

20  (Doc. Nos. 33 at ¶ 410; 49 at 23.)  Plaintiffs note in particular that they seek different forms of

21  equitable and injunctive relief, such as requiring defendant to provide them with defect-free

22  replacement components for their vehicles or enjoining future deceptive advertisements. (Doc.

23  No. 49 at 23–24.)  Defendant counters that plaintiffs' assertion that an injunction is the only

24  remedy that would prevent deceptive advertising or guarantee the repair of their vehicles is

25  wholly conclusory.  (Doc. No. 54 at 20.)

26         Before the court can consider the merits of an equitable claim, it must determine whether

27  it has equitable jurisdiction to hear that claim.  *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308,

28  1314 (9th Cir. 2022) ("Equitable jurisdiction is distinct from subject matter jurisdiction, although

1    both are required for a federal court to hear the merits of an equitable claim.") (citing *Schlesinger*

2    *v. Councilman*, 420 U.S. 738, 754 (1975)).  "For a district court to have equitable jurisdiction, and

3    thus entertain a request for equitable relief, the plaintiff must have no adequate legal remedy."

4    *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 768 (N.D. Cal. 2022) (citing *Sonner v.*

5    *Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).

6         The undersigned has recently found under similar circumstances that explicitly alleging a

7    lack of an adequate remedy at law is sufficient to survive a motion to dismiss under the applicable

8    pleading standard.  *See Wong v. Iovate Health Sciences U.S.A. Inc.*, No. 2:24-cv-00901-DAD-

9    CKD, 2025 WL 821451, at *4–5 (E.D. Cal. Mar. 14, 2025).  Moreover, plaintiffs have alleged

10   that while defendant continues to perform repairs on their vehicles, that has proven to be an

11   ineffective remedy which fails to address the root cause of the engine defect.  (Doc. No. 33 at ¶¶

12   5, 6.)  Consequently, plaintiffs have been required to pay out of pocket for repairs that are

13   ineffective and which leave them still at risk of future injury.  (*Id.* at ¶ 63.)  Plaintiffs request

14   injunctive relief to compel defendant to offer "remediation solutions" such as repairs and they

15   allege that "[m]oney damages are not an adequate remedy for the above requested non-monetary

16   injunctive relief."  (*Id.* at ¶ 410.)  Such allegations are sufficient to allege an inadequate remedy at

17   law with respect to injunctive relief.  *Gamez v. Toyota Motor Sales, U.S.A., Inc.*, No. 23-cv-

18   01464-DAD-KJN, 2024 WL 86520, at *17 (E.D. Cal. Jan. 8, 2024) (finding that allegations that

19   the plaintiffs were at ongoing risk of injury due to failing sunroofs in their vehicles and that

20   money damages would not be an adequate remedy were a sufficient basis upon which to assert an

21   inadequate remedy at law for purposes of the future injunctive relief sought).  Nevertheless,

22   plaintiffs have not alleged that a remedy at law is inadequate with respect to their request for

23   restitution or disgorgement in connection with their UCL, CLRA, and unjust enrichment claims.

24   Accordingly, the court will grant defendant's motion to dismiss plaintiffs' UCL, CLRA, and

25   unjust enrichment claims to the extent that plaintiffs seek restitution or disgorgement as to those

26   claims.  *Barton v. Procter & Gamble Co.*, 766 F. Supp. 3d 1045, 1067–68 (S.D. Cal. 2025)

27   (dismissing claims for equitable relief where the plaintiffs alleged an inadequate remedy at law in

28   relation to injunctive relief but not in relation to disgorgement or restitution); *Ary v. Target Corp.*,

1   No. 22-cv-02625-HSG, 2023 WL 2622142, at *5  (N.D. Cal. Mar. 23, 2023) ("Here, Plaintiff has

2   not alleged or established that she lacks an adequate remedy at law in the form of damages for

3   past harm, so the Court finds that it lacks equitable jurisdiction over Plaintiff's requests for

4   restitution and disgorgement.  However, to the extent Plaintiff seeks injunctive relief, Plaintiff'

5   [sic] allegations are sufficient to suggest she does not have an adequate remedy at law for future

6   harm.").

7       Defendant, in its reply, suggests that plaintiffs lack standing to pursue injunctive relief

8   because they have not alleged the necessary injury-in-fact.  (*Id.*)  The undersigned has previously

9   concluded that the allegation that "plaintiffs still own their vehicles and . . . will be harmed by

10  future attempted repairs[]" is sufficient to allege an imminent harm conferring standing to pursue

11  injunctive relief to compel repairs.  *Gamez*, 2024 WL 86320, at *18.  Here, plaintiffs have alleged

12  that they own their class vehicles and that repairs will cost them "thousands of dollars out of

13  pocket" despite failing to remedy the purported engine defect.  (Doc. No. 33 at ¶¶ 13, 24, 34, 63.)

14  Accordingly, plaintiffs have demonstrated their standing to pursue injunctive relief for future

15  repairs.

16      However, in seeking injunctive relief in the form of an order prohibiting future deceptive

17  marketing by defendant (Doc. No. 33 at ¶ 410), the court finds that plaintiffs have not

18  demonstrated standing.  "[A] plaintiff must demonstrate standing separately for each form of

19  relief sought."  *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (quoting *Friends of

20  the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 185 (2000)).  "In the context of

21  misrepresentation claims, the Ninth Circuit has held that a previously deceived consumer may

22  have standing to seek an injunction against false advertising or labeling, even though the

23  consumer now knows or suspects that the advertising was false at the time of the original

24  purchase."  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1122 (N.D. Cal.

25  2021) (internal quotation marks omitted) (quoting *Davidson v. Kimberly-Clark Corp.*, 889 F.3d

26  956, 969 (9th Cir. 2018)).  Accordingly, a consumer can assert an injury-in-fact by alleging

27  either:  (1) that they cannot rely on a product's advertising in the future and will accordingly not

28  purchase that product despite a desire to do so; or (2) that they may purchase the product again

1   believing incorrectly that the product had improved.  *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d

2   881, 897 (N.D. Cal. 2022).  However, vague allegations that a plaintiff "would consider"

3   purchasing a product in the future are insufficient to confer standing to seek injunctive relief.  *Id.*

4   at 899 (collecting cases); *see also Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th

5   Cir. 2018) (finding that the allegation that plaintiff would "consider buying" products in the

6   future was insufficient for purposes of standing)[3]; *In re Toyota RAV4 Hybrid Fuel Tank Litig.*,

7   534 F. Supp. 3d at 1122–23 (finding that the plaintiffs had failed to plead standing as to injunctive

8   relief where the plaintiffs did not allege that they were likely to purchase another vehicle).  Here,

9   plaintiffs have only alleged that they "would consider purchasing or leasing similar Ford

10  vehicles" if they could rely on defendant's future representations.  (Doc. No. 33 at ¶ 176.)  As the

11  cases cited above have found, such an allegation is not sufficient to convey standing for

12  injunctive relief regarding deceptive advertising.

13      Therefore, the court will grant defendant's motion to dismiss plaintiffs' claims for

14  injunctive relief regarding defendant's marketing.

15  **B.    Plaintiffs' Breach of Express Warranty Claims (Claims 3, 7, and 10)**

16      Defendant next moves to dismiss plaintiffs' third, seventh, and tenth claims brought under

17  California, Michigan, and Florida law for breach of express warranty.  (Doc. No. 37-1 at 14–17.)

18  In their opposition, plaintiffs "withdraw their claims for breach of express warranty."  (Doc. No.

19  49 at 10.)  Accordingly, the court will grant defendant's motion to dismiss plaintiffs' third,

20  seventh, and tenth claims without leave to amend as to those claims.

21  **C.    Plaintiffs' Consumer Protection Fraud Claims (Claims 1, 2, 6, 9, and 14)**

22      Defendant moves to dismiss plaintiffs' fraud-based consumer protection claims brought

23  under California, Michigan, and Florida state law.  (Doc. No. 37-1 at 22–31.)  It argues that

24  plaintiffs have failed to allege that defendant had pre-sale knowledge of the alleged defect in

25  /////

26  /////

27  ───────────────────

28  [3]  Citation to the unpublished Ninth Circuit opinions throughout this order is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1    plaintiffs' vehicles.[4]  (*Id.* at 22–27.)  Defendant also raises several state-specific arguments in

2    challenging plaintiffs' consumer protection claims, which the court will address below.  (*Id.* at

3    27–31.)  Each of the state statutes at issue requires that plaintiffs bringing such claims allege (and

4    ultimately prove) either an affirmative misrepresentation or an omission of material fact.  *See In*

5    *re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1094 (addressing omission-based

6    claims brought under, as relevant here, consumer protection statutes of California, Michigan, and

7    Florida).  The heightened pleading standards under Rule 9(b) are "relaxed" when applied to

8    omission-based fraud claims.  *Id.* at 1098–99 (applying a relaxed Rule 9(b) standard in the

9    context of omissions-based claims); *see also Gamez*, 2024 WL 86320, at *14 ("[T]he court agrees

10   with the vast majority of district courts that Rule 9(b)'s 'who, what, when, where, and how' test

11   must be applied while mindful of the [ ] 'inherent limitations of an omission claim.'") (citation

12   and internal quotations marks omitted).

13        In their FAC, plaintiffs allege that defendant had a duty to disclose the purported engine

14   defect to plaintiffs and failed to do so.  (Doc. No. 33 at 36.)  "[A] fraudulent omission claim

15   requires proof that a defendant was aware of the defect at the time of sale to establish defendant

16   had a duty to disclose."  *Sloan v. Gen. Motors LLC* ("*Sloan I*"), No. 16-cv-07244-EMC, 2017 WL

17   3283998, at *5 (N.D. Cal. Aug. 1, 2017) (noting that "common sense would indicate" that this

18   knowledge requirement applies not only under California law, but also under Florida law); *see*

19   *also In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 642

20   (E.D. Mich. 2019) (denying the defendant's motion to dismiss state consumer protection claims

21   brought under the laws of California, Florida, New Jersey, Tennessee, Texas, Washington,

22   Michigan, and Georgia because the "plaintiffs do sufficiently allege that GM had knowledge of

23   the AC Defect before plaintiffs purchased their vehicles").  "To be liable for a failure to disclose,

24   a defendant must have pre-sale knowledge of the defect."  *Sloan v. Gen. Motors LLC* ("*Sloan II*"),

25   287 F. Supp. 3d 840, 865 (N.D. Cal. 2018) (concluding that "[a]t this pleading stage, plaintiffs

26

27   ───────────────

     [4]  Defendant also argues that plaintiffs have failed to plausibly allege an affirmative
     misrepresentation.  (Doc. No. 37-1 at 22.)  In opposition, plaintiffs clarify that they bring their
     claims based upon defendant's alleged omissions of material facts and not any affirmative

28   misrepresentation.  (Doc. No. 49 at 10.)

1    have included sufficient allegations to support a plausible inference that defendant was aware of

2    the oil consumption defect with respect to the Class Vehicles prior to their sale").

3        Because defendant's arguments regarding pre-sale knowledge are common to all

4    plaintiffs, the court will first address whether plaintiffs have sufficiently alleged pre-sale

5    knowledge of the purported defect and before addressing defendant's state-specific arguments.

6            1.    Pre-Sale Knowledge As to All Consumer Fraud Claims

7        Defendant argues that plaintiffs have not alleged sufficient facts to demonstrate that it had

8    pre-sale knowledge regarding defects in plaintiffs' three specific vehicles.  (Doc. No. 37-1 at 23–

9    27.)  Specifically, defendant contends that plaintiffs have alleged in conclusory fashion that the

10   2.3L engine in plaintiffs' vehicles has the "same design" as other vehicles for which defendant

11   had issued technical service bulletins and recalls.  (*Id.* at 23.)  Defendant then argues that such an

12   allegation, even if it were not conclusory, would be insufficient to show its pre-sale knowledge

13   because it fails to address whether defendant would know that a similar defect would be present

14   in similarly designed engines.  (*Id.* at 23.)  Defendant addresses six categories of allegations that

15   plaintiffs make regarding how defendant was put on notice of the alleged defect:  (1) recalls; (2)

16   testing: (3) complaints; (4) technical service bulletins ("TSBs"); (5) a customer satisfaction

17   program ("CSP"); and (6) a redesign of the 2.3L engine that is found in plaintiffs' vehicles.  (*Id.*

18   at 23–27.)

19       "Plaintiffs need not plead exclusive knowledge; it is generally sufficient to plead that

20   defendants have superior knowledge, and that the information was not 'reasonably discoverable

21   by the plaintiffs.'"  *Flier v. FCA US LLC*, No. 21-cv-02553-CRB, 2022 WL 16823042, at *5

22   (N.D. Cal. Nov. 8, 2022) (citation omitted).  "Exclusive knowledge is properly pleaded where a

23   plaintiff alleges facts that show the defendants had superior knowledge."  *Chillon v. Ford Motor

24   Co.*, No. 22-cv-02111-DSF-AGR, 2022 WL 19569545, at *5–6 (C.D. Cal. Dec. 2, 2022) (citing

25   *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 754

26   F. Supp. 2d 1145, 1174 (C.D. Cal. 2010) ("Plaintiffs establish a duty to disclose because they

27   allege that Toyota has superior knowledge of the SUA defects")).  "'[E]xclusive knowledge' . . .

28   does not mean facts known only to [the defendant manufacturer]"; rather, "what is required [ ] is

11

1    that [the defendant manufacturer] had knowledge of any putative defect *superior* to that of

2    ordinary customers." *Zurba v. FCA US LLC*, No. 5:21-cv-01824-JLS-SHK, 2022 WL 17363073,

3    at *5 (C.D. Cal. Nov. 10, 2022) (rejecting the defendant's argument that "a 'public' recall defeats

4    any showing of [defendant's] superior knowledge sufficient to create a duty to disclose") (citing

5    *Clenney v. FCA US LLC*, No. 22-cv-00547-VC, 2022 WL 2197074, at *4 (N.D. Cal. June 20,

6    2022) (rejecting a similar argument when the plaintiffs partially relied on publicly available

7    materials to establish knowledge)). "[E]ven if the information was technically discoverable, 'the

8    presence of the information from publicly available sources—for instance, online—does not

9    automatically foreclose an exclusive-knowledge claim.'" *Crump v. FCA US LLC*, No. 5:22-cv-

10   01266-MCS-SP, 2022 WL 19569517, at *3–4 (C.D. Cal. Oct. 31, 2022) (quoting *Anderson v.

11   Apple Inc.*, 500 F. Supp. 3d 993, 1015 (N.D. Cal. 2020)).

12          Plaintiffs argue that this court has already rejected defendant's argument regarding

13   whether it is sufficient to allege that an engine has the same design and is made of the same

14   materials as a defective engine to establish pre-sale knowledge of a defect.  (Doc. No. 49 at 12;

15   *see also Miller v. Ford Motor Co.* ("*Miller I*"), 620 F. Supp. 3d 1045, 1072–73 (E.D. Cal. 2022)

16   (finding that the plaintiffs had alleged that the Ecoboost engines at issue shared a design, material

17   makeup, and a defect which was sufficient to create the reasonable inference that knowledge of

18   defect as to one Ecoboost engine model implied knowledge of defects in other Ecoboost engine

19   models); *Miller v. Ford Motor Co.* ("*Miller II*"), No. 2:20-cv-01796-DAD-CKD, 2024 WL

20   1344597, at *35 (E.D. Cal. Mar. 29, 2024) (finding that "alleged sources of information"

21   regarding a defect in an Ecoboost engine with a 1.6L capacity was sufficient to allege pre-sale

22   knowledge of a defect in an Ecoboost engine with a 2.0L capacity).  Plaintiffs then argue that the

23   various categories identified by defendant in the FAC support their contention that defendant had

24   knowledge of the defect in plaintiffs' vehicles prior to plaintiffs' purchases.  (Doc. No. 49 at 13–

25   17.)  However, plaintiffs note that these allegations should be taken together and treated

26   holistically, rather than in isolation, in considering whether pre-sale knowledge has been

27   sufficiently alleged.  (*Id.* at 13.)  The court will first address plaintiffs' allegations of recalls and

28   consumer complaints as sources of defendant's pre-sale knowledge.

a.    *Recalls*

Plaintiffs allege that defendant had knowledge of the defect because it issued recalls of certain vehicles equipped with specific EcoBoost engines.  (Doc. No. 33 at ¶¶ 70–82.)  Specifically, plaintiffs allege that defendant learned of "at least nine incidents during which vehicles with the EcoBoost engine caught on fire" and subsequently issued Recall Campaign 12S41 (NHTSA Recall No. 12V551) ("the 2012 recall").  (*Id.* at ¶¶ 70–71.)  This recall was limited to only certain 2013 Ford Escape and 2013 Ford Fusion vehicles with the 1.6L EcoBoost engine.  Plaintiffs further allege that:

> Ford's supposed "fix" with the 2012 Recall was ineffective.  Rather than redesigning and replacing the EcoBoost Engine to address the root cause of the problem, Ford's recall servicing involved a mere check for diagnostic trouble codes and engine fluid leaks, and a reprogram of the vehicle's powertrain control module.  In other words, the remedy was ineffective because it merely attempted to address the symptoms of the Engine Defect but not its actual cause. . . .

> As part of the 2012 Recall, Ford established a "cross functional task force to further investigate these fires."  Testing conducted as part of this investigation "indicated engine overheating and cracked cylinder heads that allowed oil to leak." Indeed, on November 18, 2013— nearly a year after Ford rolled out the 2012 Recall—Ford's Field Review Committee "determined that a safety defect exists, and that a voluntary safety recall should be conducted." . . .

> On November 25, 2013, Ford initiated Recall Campaign 13S12 (NHTSA Recall No. 13V583) (the "2013 Recall") . . . As with the 2012 Recall, Ford failed to extend a fix to all of the Class Vehicles and instead limited the recall to 2013 Ford Escapes with the 1.6L EcoBoost engine (approximately 139,917 vehicles).  The 2013 Recall again warned of the risk of "localized overheating of the engine cylinder head," which "may cause the cylinder head to crack, causing an oil leak that may result in a fire in the engine compartment." . . . Ford's solution in the 2013 Recall was to add "a new engine temperature sensor."  This sensor could detect when the engine was overheating but it did nothing to prevent the coolant leaks.

(*Id.* at ¶¶ 73–76.)  Plaintiffs also allege that, in 2017, defendant issued Recall Campaign 17S09 (NHTSA Recall No. 17V209) ("the 2017 recall"), which applied to 2014 Ford Escape, 2014– 2015 Ford Fiesta ST, 2013–2014 Ford Fusion, and 2013–2015 Ford Transit Connect models equipped with a 1.6L EcoBoost engines.  (*Id.* at ¶ 79.)

/////

Defendant argues that these recalls do not reflect its knowledge of a defect in plaintiffs' vehicles. (Doc. No. 37-1 at 24.) Specifically, it contends that these recalls were for specific Ford models that had a 1.6L EcoBoost engine, whereas plaintiffs' vehicles are different models with a 2.3L EcoBoost engine. (*Id.*) The court has previously rejected substantially this same argument on the basis that the plaintiffs alleged, as they do here, that each of the class vehicles has an EcoBoost engine and that those "engines have the same engine block design, are made from the same materials, and suffer from the same Engine Defect" as the 1.6L EcoBoost engine. (Doc. No. 33 at ¶¶ 2, 82); *see also Miller II*, 2024 WL 1344597, at *35 (rejecting the defendant's argument that because the recalls applied to different car models and sizes of EcoBoost engine that they could not support a finding of pre-sale knowledge); *Miller I*, 620 F. Supp. 3d at 1073 (rejecting, in the context of TSBs, the argument that the plaintiffs had failed to allege knowledge of the defect because those TSBs applied to different vehicle models that had substantially the same engine). Defendant urges the court to reject this reasoning, citing the decisions in *Cho v. Hyundai Motor Company, Ltd.*, 636 F. Supp. 3d 1149 (C.D. Cal. 2022), *Deras v. Volkswagen Group of America, Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018), *Pascal v. Nissan North America, Inc.*, No. 8:20-cv-00492-JLS-JDE, 2022 WL 2784393 (C.D. Cal. June 8, 2022), and *Wilson v. Hyundai Motor America*, No. 8:22-cv-00771-JLS-JDE, 2023 WL 3025376 (C.D. Cal. Mar. 14, 2023). (Doc. No. 37-1 at 24.) However, most of the cases relied upon by defendant in this regard describe instances where the plaintiffs failed to allege how the recall of a separate product implied knowledge of a defect in an accused product, unlike here where plaintiffs have specifically alleged that the recalls applied to an engine with a substantially similar design as those in plaintiffs' vehicles. *Cho*, 636 F. Supp. 3d at 1170–71 ("Missing from the Complaint, however, is any allegation that Hyundai's Recall 203 of the 2.0 Nu MPI Engine dealt with a similar defective part that exists in the Class Vehicles."); *Pascal*, 2022 WL 2784393, at *9 (finding that the plaintiffs failed to allege how recall notices that did not involve the class vehicles would establish knowledge of a common defect in the class vehicles); *Wilson*, 2023 WL 3025376, at *7 (finding that recalls that took place several years after the purchase of different vehicles did not constitute evidence of pre-sale knowledge where the recalls did not apply to the

14

1   class vehicles).  Defendant also misstates the holding of *Deras*.  In that case, the district court

2   concluded that, although prior recalls of similarly designed sunroofs in vehicles produced by

3   other manufacturers were insufficient "standing alone" to establish the defendant's pre-sale

4   knowledge, such recalls could be some evidence supporting an inference of the defendant's pre-

5   sale knowledge of the alleged defect.  *Deras*, 2018 WL 2267448, at *5–6.  The court therefore

6   finds that the authority upon which defendant relies does not persuasively support its argument in

7   this regard.

8          Moreover, other courts have recognized that allegations of this type asserting a defect in a

9   product of a similar design or containing a similar part can be sufficient to support claims of pre-

10   sale knowledge.  *Wadeea v. Mercedes-Benz USA, LLC*, 758 F. Supp. 3d 1217, 1225 (S.D. Cal.

11   2024) (finding that the plaintiff's allegations that the defendant had issued recalls as to similar

12   defects in similar non-class vehicles supported a plausible inference of the defendant's pre-sale

13   knowledge of the defect); *see also McCarthy v. Toyota Motor Corp.*, No. 8:18-cv-00201-JLS-

14   KES, 2019 WL 3220579, at *4–5 (C.D. Cal. Apr. 9, 2019) (rejecting the argument that

15   knowledge of defect in a different vehicle model cannot support an inference of a defendant's

16   pre-sale knowledge of the defect in a substantially similar vehicle); *MacDonald v. Ford Motor*

17   *Co.*, 37 F. Supp. 3d 1087, 1093 (N.D. Cal. 2014) (finding that the plaintiffs' allegations regarding

18   the defendant's awareness of a defective part gave rise to a plausible inference that the defendant

19   had pre-sale knowledge that the vehicles it sold with that part would also be defective).

20   Accordingly, the court concludes that plaintiffs' allegations regarding defendant's 2012, 2013,

21   and 2017 recalls of vehicles with a 1.6L EcoBoost engine adequately support an inference that

22   defendant knew that a similar defect was present in the 2.3L EcoBoost engine in plaintiffs'

23   vehicles.

24          b.     *Complaints*

25          Plaintiffs allege that, prior to their purchase of their specific vehicles, defendant had

26   received at least 230 complaints regarding EcoBoost engines from 2012 to 2017.  (Doc. No. 33 at

27   ¶¶ 100–01.)  Plaintiffs further allege that there have been, in total, at least 2,000 NHTSA

28   complaints reporting problems with class vehicles related to the EcoBoost engines and at least 75

1    complaints specifically regarding 2.3L EcoBoost engine problems.  (*Id.* at ¶¶ 101–02.)  Defendant

2    observes, however, that only one NHTSA complaint regarding the 2.3L EcoBoost engine predates

3    plaintiffs' vehicle purchases and plaintiffs do not contest this point.  (Doc. Nos. 37-1 at 25; 49 at

4    14–15.)

5       "An unusually high volume of consumer complaints can be sufficient, by itself, to

6    plausibly allege pre-sale knowledge."  *Wilson v. Hyundai Motor Am.*, No. 8:22-cv-00771-JLS-

7    JDE, 2023 WL 3025376, at *6 (C.D. Cal. Mar. 14, 2023) (internal quotation marks omitted)

8    (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017)).  Here, the allegation

9    of at least 230 NHTSA complaints over the course of five years regarding EcoBoost engines is

10   sufficient to meet the "unusually high volume" of complaints standard.  *See, e.g., In re Toyota*

11   *RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1098 (finding that sample of 200-plus NHTSA

12   complaints supported an inference of the defendant's pre-sale knowledge of defect); *Gamez*, 2024

13   WL 86320, at *11 (finding that a sample of seven NHTSA complaints supported an inference of

14   the defendant's pre-sale knowledge of defect); *Parrish*, 463 F. Supp. 3d at 1058 (finding that a

15   sample of more than 100 complaints supported a reasonable inference of the defendant's pre-sale

16   knowledge of a defect); *compare Sloan I*, 2017 WL 3283998, at *7 (finding that alleged sample

17   of 81 complaints was not an unusually high number of complaints and therefore did not support

18   an inference of the defendant's pre-sale knowledge of defect), *with Sloan II*, 287 F. Supp. 3d at

19   866–67 (finding that sample of 532 complaints was a high number of complaints and supported

20   such an inference).

21      Defendant argues that the vast majority of the complaints which plaintiffs refer to in their

22   FAC pertain to different vehicle models with different EcoBoost engines than those at issue in

23   this case.  (Doc. No. 37-1 at 25.)  For the same reasons expressed above as to recalls, the court

24   also rejects this argument advanced by defendant with respect to consumer complaints.  *See Sloan*

25   *II*, 287 F. Supp. 3d at 867 ("It is true, as Defendant points out, that a number of the complaints

26   relate to non-Class Vehicles (models of the same vehicles preceding the Class Period or other

27   vehicles altogether).  However, all the vehicles are equipped with the same allegedly defective

28   engine and thus bolster the plausibility of inferring Defendant's general knowledge [of the

16

purported defect].").  Accordingly, the court concludes that plaintiffs' allegations regarding

consumer complaints support an inference of defendant's pre-sale knowledge of the purported

defect.

Because the court has found that the number of consumer complaints and the defendant's

recalls support a plausible inference that defendant had pre-sale knowledge of the purported

defect, the court concludes that plaintiffs have sufficiently alleged pre-sale knowledge.  *See

Wadeea*, 758 F. Supp. 3d at 1225 (finding that allegations regarding consumer complaints and

recalls of similarly defective vehicles were sufficient to support a plausible inference of pre-sale

knowledge); *McCarthy*, 2019 WL 3220579, at *4–5 (finding that allegations regarding defects in

substantially similar products were sufficient to support a plausible inference of defendant's

knowledge of the defect at the time of the sale); *Sloan II*, 287 F. Supp. 3d at 867 (finding that an

unusually high volume of complaints regarding a group of vehicles with a common engine design

was sufficient at the pleading stage to support a plausible inference of defendant's pre-sale

knowledge of engine defect).

2.    CLRA (Claim 1)

Defendant moves to dismiss the Nelson plaintiffs' claim brought under the California

CLRA on the basis that plaintiffs have failed to sufficiently allege pre-sale knowledge.  (Doc. No.

37-1 at 12.)  "Under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a

defect at the time of sale to survive a motion to dismiss."  *Wilson*, 668 F.3d at 1145.  For the same

reasons the court has rejected defendant's argument in this regard as to plaintiff's consumer fraud

claims generally, the court also rejects as to plaintiff's CLRA claim.  Accordingly, defendant's

motion to dismiss the Nelson plaintiffs' CLRA claim will be denied.

3.    UCL (Claim 2)

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."

Cal. Bus. & Prof. Code §§ 17200 *et seq*.  These three "prongs" each provide a distinct theory of

liability and basis for relief.  *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

163, 180 (1999); *see also Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir.

2007).  Defendant moves to dismiss plaintiffs' UCL claim.  (Doc. No. 37-1 at 28–29.)

17

1    Specifically, defendant argues that the Nelson plaintiffs' claims brought under the unlawful and

2    fraudulent prongs of the UCL fail because plaintiffs have failed to sufficiently allege pre-sale

3    knowledge.  (*Id.*)  Defendant further contends that plaintiffs' claim brought under the unfair

4    prong of the UCL fails because plaintiffs have not sufficiently alleged that defendant's conduct

5    was unfair under either the balancing test or tethering test used for UCL unfair prong claims.

6    (*Id.*)  Plaintiffs contend that, because they sufficiently allege their CLRA claim, they also have

7    sufficiently alleged their UCL claim.  (Doc. No. 49 at 18.)

8        As to the unlawful prong of the UCL claim, because the court has found that the

9    California (Nelson) plaintiffs have sufficiently stated their CLRA claim, it also concludes they

10   have adequately alleged their UCL claim under the unlawful prong, which "borrows violations of

11   other laws and treats them as unlawful practices that the [UCL] makes independently actionable."

12   *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 950 (2018) (citations

13   omitted); *see also Enea v. Mercedes-Benz USA, LLC*, No. 18-cv-02792-HSG, 2019 WL 402315,

14   at *2 (N.D. Cal. Jan. 31, 2019) ("Because the Court finds that Plaintiff has plausibly alleged a

15   breach of implied warranty claim, the Court also finds that Plaintiff has plausibly alleged a

16   violation of the unlawful prong of the UCL.").  Nevertheless, because "[t]he three 'prongs' of the

17   UCL are independent of each other and may be asserted as separate claims[]" the court will

18   address the other prongs of plaintiffs' UCL claim below.  *Backus v. Biscomerica Corp.*, 378 F.

19   Supp. 3d 849, 854 (N.D. Cal. 2019) (citing *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 180).

20       Defendant argues that plaintiffs' UCL claim under the fraudulent prong should be

21   dismissed for failure to allege defendant's pre-sale knowledge.  (Doc. No. 37-1 at 28); *see also*

22   *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159–60 (N.D. Cal. 2011) ("[W]hen

23   federal district courts have considered fraudulent prong claims based on representations about

24   defective products, they have generally required a plausible showing that the defendant knew of

25   the alleged defect when it made the representations alleged to be deceptive.").  Again, the court

26   has already rejected defendant's argument challenging the sufficiency of the FAC with respect to

27   its pre-sale knowledge of the defect and incorporates that same analysis here.  The court therefore

28   concludes that plaintiffs have sufficiently alleged a claim under the fraudulent prong of the UCL.

Regarding the unfair prong, California courts employ three different tests in determining whether a business practice is "unfair" under the UCL:  the balancing test, the FTC test, and the public policy test.  *See Allen v. Hyland's, Inc.*, No. 12-cv-01150-DMG-MAN, 2016 WL 4402794, at *3 (C.D. Cal. Aug. 16, 2016), *rev'd in part on other grounds sub nom. Allen v. Hylands, Inc.*, 773 F. App'x 870 (9th Cir. 2019); *see also Epperson v. Gen. Motors, LLC*, 706 F. Supp. 3d 1031, 1041–42 (S.D. Cal. 2023) (observing that the Ninth Circuit has recognized at least three tests for determining what constitutes an unfair business practice).  Here, defendant contends that there are only two such tests—the balancing and public policy tests—and argues that plaintiffs have failed to sufficiently allege unfair business practices under either of those tests.  (Doc. No. 37-1 at 29.)

"The balancing test determines whether the alleged practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's alleged conduct against the gravity of the harm to the alleged victim."  *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 919 (E.D. Cal. 2020).  The public policy test is satisfied, in relevant part, where the challenged conduct "is tethered to [violation of] any underlying constitutional, statutory[,] or regulatory provision[.]"  *Epperson*, 706 F. Supp. 3d at 1041 (internal quotation marks omitted).  However, the court need not determine which test applies because plaintiffs have stated a cognizable claim under the CLRA, which is sufficient to also state a cognizable claim under the unfair prong of the UCL.  *Jenkins v. j2 Glob., Inc.*, No. 13-cv-09226-DSF-MRW, 2014 WL 12687417, at *5 (C.D. Cal. May 23, 2014) (finding that the plaintiffs had stated a claim under the unfair prong of the UCL on the basis that the plaintiffs state actionable claims under the CLRA and the Auto-Renewal Statute); *see also S.W. v. Cryoport, Inc.*, No. 8:24-cv-02212-AH-DFM, 2025 WL 1421909, at *9–10 (C.D. Cal. Apr. 24, 2025) (finding that the plaintiffs' allegations were sufficient to state claims under both the CLRA and the unfair prong of the UCL); *Faison v. Walmart Inc.*, No. 2:24-cv-01024-DJC-CSK, 2024 WL 4374133, at *1 (E.D. Cal. Oct. 2, 2024) ("Plaintiff's allegations that Defendants violated the CLRA, FAL, and FTC Act are enough to also support both unlawful and unfair prong claims.").

/////

19

1    Accordingly, the court will deny defendant's motion to dismiss the Nelson plaintiffs'

2  claim brought under the UCL.

3          4.    Michigan Consumer Protection Act (Claim 6)

4    Defendant also moves for dismissal of plaintiff Butler's claim brought under the Michigan

5  Consumer Protection Act ("MCPA") on the grounds that vehicle sales are exempt under that

6  statute.  (Doc. No. 37-1 at 30.)  Indeed, the court has previously concluded that vehicle sales are

7  exempt under the MCPA and dismissed claims involving vehicle sales brought by Michigan

8  plaintiffs.  *Miller II*, 2024 WL 1344597, at *45.  As such, the court will grant defendant's motion

9  to dismiss plaintiff Butler's claim brought under the MCPA.[5]

10          5.    Florida Deceptive and Unfair Trade Practices Act (Claim 9)

11    Defendant moves for dismissal of plaintiff Frades' claim brought under the Florida

12  Deceptive and Unfair Trade Practices Act ("FDUTPA"), arguing that it is barred by the

13  applicable statute of limitations.  (Doc. No. 37-1 at 30–31.)  According to defendant, the

14  applicable statute of limitations is four years, plaintiff Frades purchased his vehicle in January

15  2018, and did not bring this claim until December 2024.  (*Id.* at 31.)  Moreover, defendant argues

16  that the FDUTPA does not provide for the tolling of the applicable statute of limitations based on

17  delayed discovery of a defect.  (*Id.*)  Plaintiffs respond that the FDUTPA may be tolled on

18  "fraudulent concealment" grounds.  (Doc. No. 49 at 19.)

19    "When a FDUTPA claim is based on a product purchase, the statute begins to run from

20  the date of sale."  *Fisher v. Harley-Davidson Motor Grp.*, No. 2:19-cv-14154-RLR, 2019 WL

21  8014364, at *2 (S.D. Fla. Oct. 18, 2019).  It is true that "since claims under FDUTPA are founded

22  on statutory liability, not fraud, the delayed discovery rule does not apply."  *Koski v. Carrier*

23  *Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017).  Nevertheless, "the doctrine of fraudulent

24  concealment . . . can toll FDUTPA claims."  *Sloan II*, 287 F. Supp. 3d at 890.  "Under Florida

_____

26   [5]  In their opposition, plaintiffs inform the court that the Michigan Supreme Court is currently considering whether "to overrule the prior case law on which Ford relies[.]"  (Doc. No. 49 at 19

27  (citing *Att'y Gen. v. Eli Lilly & Co.*, 1 N.W.3d 287 (Mich. 2024)).  The court declines to adopt plaintiffs' proposal that it reserve judgment until the Michigan Supreme Court has ruled in that

28  pending case.

1    law, '[i]n order to establish fraudulent concealment, plaintiff must allege and [ultimately]

2    establish 1) successful concealment of the cause of action, 2) fraudulent means to achieve that

3    concealment, and 3) plaintiff exercised reasonable care and diligence in seeking to discover the

4    facts that form the basis of his claim.'"  *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894,

5    919 (N.D. Cal. 2020) (alterations in original) (quoting *Burr v. Philip Morris USA Inc.*, No. 8:07-

6    cv-01429-MSS-EAJ, 2012 WL 5290164, at *3 (M.D. Fla. Sept. 28, 2012)).  "Critically, however,

7    the fraudulent means alleged must go beyond mere non-disclosure, and must constitute active and

8    willful concealment."  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1229 (S.D. Fla.

9    2021) (internal quotation marks omitted).

10          Plaintiffs argue that they have sufficiently alleged affirmative acts by defendant which

11   prevented their discovery of the engine defect and thus satisfy the requirements for fraudulent

12   concealment under Florida law.  (Doc. No. 49 at 21–22.)  Specifically, they point to their

13   allegations that plaintiff Frades researched his vehicle prior to purchasing and that defendant's

14   marketing materials failed to disclose the purported defect.  (*Id.*; Doc. No. 33 at ¶ 35.)  However,

15   as noted, alleged failure to disclose a defect in advertising materials is an insufficient basis upon

16   which to allege fraudulent concealment under Florida law.  *See Lewis*, 530 F. Supp. 3d at 1230

17   ("Likewise, the alleged misrepresentations in Defendants' marketing materials amount to mere

18   nondisclosure."); *see also Fisher*, 2019 WL 8014364, at *7 (finding that failure to disclose a

19   defect in marketing materials is mere nondisclosure and not the active conduct required under

20   Florida fraudulent concealment law); *cf. Sloan II*, 287 F. Supp. 3d at 889 (finding that allegations

21   that dealerships which were agents of the defendant made statements that a vehicle's oil

22   consumption was normal sufficed as a basis upon which to allege active concealment of the

23   defect).  Moreover, plaintiffs only allege that plaintiff Frades viewed marketing materials prior to

24   his purchase; they fail to allege, as is required, that the marketing materials prevented plaintiff

25   Frades from uncovering the defect after his purchase.  *Lewis*, 530 F. Supp. 3d at 1229–30

26   (observing that "a defendant's concealing conduct must occur after the plaintiff's cause of action

27   has already accrued, which, in this case, occurred on the date of purchase" and concluding that

28   plaintiffs' allegation that they relied on marketing materials "*before* purchasing their vehicles"

1    was insufficient).  Therefore, the court finds that plaintiffs have not sufficiently alleged fraudulent

2    concealment under Florida law.

3          Because plaintiff Frades purchased his vehicle more than four years prior to the filing of

4    his FDUTPA claim, the FDUTPA claim is time-barred.  Therefore, the court will grant

5    defendant's motion to dismiss plaintiff Frades' FDUTPA claim.

6    **C.**    **Plaintiffs' Breach of Implied Warranty Claims (Claims 4, 5, 8, and 11)**

7          Defendant moves to dismiss plaintiffs' claims brought under California, Michigan, and

8    Florida state law for breach of implied warranty on the bases that:  (1) plaintiffs have failed to

9    allege that they are in privity with defendant as to their claims brought pursuant to the California

10   Commercial Code and Florida law; (2) plaintiffs have failed to allege that the engine defects in

11   the vehicles of plaintiffs Frades and Butler occurred during the time frame covered by the

12   vehicles' express warranty as required under Florida and Michigan state law; and (3) all of

13   plaintiffs' claims are barred by the applicable statutes of limitations.  (Doc. No. 37-1 at 17–21.)

14   The court will address defendant's arguments with respect to each claim below.

15         1.    Song-Beverly Act (Claim 4)

16         Defendant moves to dismiss plaintiffs' claim brought pursuant to California's Song-

17   Beverly Act because it is time-barred.  (Doc. No. 37-1 at 19–20.)  Specifically, defendant

18   identifies that the Nelson plaintiffs allege that they purchased their vehicle on January 23, 2018,

19   six years prior to the filing of the initial complaint in this action.  (*Id.*)  Defendant argues that the

20   applicable statute of limitations as to this claim is four years and that equitable tolling pursuant to

21   fraudulent concealment does not apply because plaintiffs have not alleged when they discovered

22   the alleged fraud, their attempts to investigate the fraud, or anything beyond defendant's mere

23   nondisclosure of the alleged defect.  (*Id.*)  Plaintiffs argue that they have adequately pleaded

24   fraudulent concealment as a cause of action which entitles them to tolling as to their Song-

25   Beverly Act claim.  (Doc. No. 49 at 21.)  Moreover, plaintiffs point to their FAC's allegation that

26   each individual plaintiff sought repairs immediately after the purported defect manifested in their

27   vehicles, thus satisfying any requirement that they make reasonable efforts to uncover the defect.

28   /////

1    (*Id.*)  In its reply, defendant emphasizes that plaintiffs fail to address whether nondisclosure is

2    sufficient for purposes of fraudulent concealment tolling.  (Doc. No. 54 at 11.)

3            Under California law, "[t]he doctrine of fraudulent concealment tolls the statute of

4    limitations where a defendant, through deceptive conduct, has caused a claim to grow stale."

5    *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013).  The fraudulent concealment

6    doctrine applies to tolling of a statute of limitations for Song-Beverly Act claims.  *Philips v. Ford*

7    *Motor Co.*, No. 14-cv-02989-LHK, 2013 WL 1745948, at *14 (N.D. Cal. May 3, 2016) ("Several

8    courts have determined that fraudulent concealment tolling applies to claims brought under the

9    Song-Beverly Act.").  Pursuant to California law, "[t]o toll the statute of limitations under the

10   doctrine, a plaintiff must plead '(a) the substantive elements of the fraud, and (b) an excuse for

11   late delivery of the facts.'"  *Sloan II*, 287 F. Supp. 3d at 888 (quoting *Sater v. Chrysler Grp.*, No.

12   14-cv-00700-VAP-DTB, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015)).  "With respect to

13   the first prong, '[t]he required elements for fraudulent concealment are (1) concealment or

14   suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff;

15   (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the

16   fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or

17   she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result

18   of the concealment or suppression of the fact.'"  *Siqueiros v. Gen. Motors LLC*, No. 16-cv-07244-

19   EMC, 2022 WL 3717269, at *9 (N.D. Cal. Aug. 29, 2022) (alterations in original) (quoting

20   *Hambrick v. Healthcare Partners Med. Grp.*, 238 Cal. App. 4th 124, 162 (2015)).  "The second

21   element requires a plaintiff to allege:  (1) when the fraud was discovered; (2) the circumstances

22   under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it

23   or had no actual or presumptive knowledge of facts sufficient to put him on inquiry."  *Goldstein*

24   *v. Gen. Motors LLC* ("*Goldstein I*"), 445 F. Supp. 3d 1000, 1017 (S.D. Cal. 2020) (internal

25   quotation marks omitted).

26           Above, this court has concluded that plaintiffs have sufficiently alleged their CLRA claim.

27   The first prong of plaintiffs' fraudulent concealment claim is premised on the same theory as their

28   CLRA claim: That defendant was aware of the purported engine defect prior to the purchase of

1    affected vehicles by plaintiffs, that defendant was under a duty to disclose this defect, and that

2    defendant failed to disclose that defect.  (Doc. No. 33 at ¶¶ 393–95.)  Indeed, defendant appears

3    to concede that plaintiffs' fraudulent concealment claim is based on the same theory of fraudulent

4    omission as their state statutory consumer protection claims in moving to dismiss both of those

5    claims on the basis that plaintiffs have failed to adequately allege defendant's pre-sale

6    knowledge.  (Doc. No. 37-1 at 22.)  Accordingly, the analysis set forth above addressing the

7    sufficiency of plaintiffs' allegations as to defendant's duty to disclose and pre-sale knowledge

8    applies with equal force to support a finding that fraudulent concealment has also been adequately

9    alleged by plaintiffs.  *See, e.g., Philips*, 2016 WL 1745948, at *14 (finding that the plaintiffs'

10   allegations regarding the defendant's pre-sale knowledge of a defect which they had a duty to

11   disclose and failed to disclose were sufficient to satisfy the first prong of the fraudulent

12   concealment doctrine); *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 8:19-cv-01298-JLS-KES,

13   2021 WL 4813753, at *13 (C.D. Cal. July 29, 2021) (finding that the plaintiffs had satisfied the

14   requirement to plead the substantive elements of fraudulent concealment by alleging an omission

15   by the defendant car manufacturer of a defect, pre-sale knowledge of the defect, and a duty to

16   disclose that defect); *see also Goldstein v. Gen. Motors LLC* ("*Goldstein II*"), 517 F. Supp. 3d

17   1076, 1095 (S.D. Cal. 2021) (observing that the substantive elements of fraudulent concealment

18   by omission and the CLRA are the same).

19        Regarding the Nelson plaintiffs' discovery of the defect for purposes of the second prong

20   (i.e. an excuse for late delivery of the facts), plaintiffs allege that the Nelson plaintiffs discovered

21   that their vehicle suffered from the purported defect on or about December 22, 2023, when the

22   "orange engine light" illuminated in their car and the vehicle failed to start smoothly.  (Doc. No.

23   33 at ¶ 17.)  The Nelson plaintiffs allege that they promptly took their car in for repair on

24   December 22, 2023, and were informed that there was a fluid intrusion in the engine from the

25   radiator.  (*Id.*)  They allege that they could not discern that their vehicles were defective until the

26   purported defect caused the EcoBoost engine to leak coolant and overheat.  (*Id.* at ¶ 134.)

27   Defendant argues that plaintiffs must allege further when they "learned of the fraud, how they

28   acted diligently, or how Ford prevented them from discovering their claim."  (Doc. No. 54 at 11.)

1    This argument is unpersuasive.  It is sufficient at the pleading stage for plaintiffs to allege that

2    they encountered an engine issue with their vehicle and promptly took it in for service in order to

3    demonstrate due diligence in discovering the relevant facts.  *Philips*, 2016 WL 1745948, at *14

4    (finding that the plaintiffs alleged that they had lacked knowledge of a defect but had exercised

5    due diligence in attempting to uncover the facts by bringing their vehicle in for repairs) (citing

6    *Allen v. Similasan Corp.*, 96 F. Supp. 3d 1063, 1071 (S.D. Cal. 2015) (finding that a plaintiff

7    seeking tolling of the statute of limitations based upon fraudulent concealment tolling must allege

8    that they exercised due diligence in attempting to uncover the facts)); *see also In re Toyota Motor*

9    *Corp. Hybrid Brake Mktg., Sales, Pracs. & Prods. Liab. Litig.*, No. 10-cv-02172-CJC-RNB, 2011

10   WL 13160303, at *6 (C.D. Cal. Jan. 20, 2011) (finding that the plaintiffs alleged they had made

11   reasonable efforts to uncover a concealed defect by taking their vehicles in for repairs to

12   defendant's authorized dealerships); *Sonneveldt*, 2021 WL 4183753, at *13 (finding that the

13   plaintiffs' allegations that their vehicles suffered sudden engine failure without prior warning was

14   sufficient to satisfy the second prong of the fraudulent concealment tolling test as to their Song-

15   Beverly claim).  Accordingly, the court concludes that plaintiffs' allegations are sufficient to

16   satisfy the second prong of the fraudulent concealment doctrine.

17          Defendant argues that, regardless of whether fraudulent concealment can be based on

18   mere omission, tolling on that basis requires active misrepresentations on their part.  (Doc. No.

19   37-1 at 20.)  In support of this contention, defendant cites to an opinion in which a district court

20   stated that California courts require affirmative misrepresentations for fraudulent concealment

21   tolling.  *Herremans v. BMW of N. Am., LLC*, No. 14-cv-02363-MMM-PJW, 2014 WL 5017843,

22   at *5 (C.D. Cal. Oct. 3, 2014) ("Absent a fiduciary relationship, nondisclosure is not fraudulent

23   concealment—affirmative deceptive conduct is required.") (internal quotation marks omitted)

24   (quoting *Long v. Walt Disney Co.*, 116 Cal. App. 4th 868, 874 (2004)).  However, another

25   California district court has persuasively explained as follows:

26          Many of the cases concluding that plaintiffs must allege "affirmative
             deceptive conduct" cite to *Long v. Walt Disney Co.*, 116 Cal. App.
27           4th 868, 874 (2004).  Relying upon *Johnson v. Harcourt, Brace,
             Jovanovich, Inc.*, 43 Cal. App. 3d 880, 896 (1974), the *Long* court
28           held that "[a]bsent a fiduciary relationship, nondisclosure is not

fraudulent concealment—affirmative deceptive conduct is required." One court in this district has analyzed *Long* and the significance of the opinion's reliance on *Johnson*. *See Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-cv-02054-JCS, 2019 WL 6050768, at *9 (N.D. Cal. Nov. 15, 2019). In *Garcia*, the court explained that "*Johnson* . . . went on to state not only that no such [fiduciary] relationship existed, but also 'nor were defendants *under a duty* to inform plaintiffs' [sic] of the purported misconduct,'" and that "[o]ther California appellate decisions define fraudulent concealment—albeit in the context of a claim for relief, rather than a tolling doctrine—as requiring only 'a duty to disclose the fact to the plaintiff,' rather than a duty necessarily arising from a fiduciary relationship." Therefore, the *Garcia* court "conclude[d] that the California Supreme Court . . . would likely hold omission in the face of a duty to disclose sufficient to support tolling based on fraudulent concealment, even where the duty does not arise from a fiduciary relationship." The Court agrees with the *Garcia* court and concludes that because Plaintiffs have "plausibly alleged a safety issue giving rise to a duty to disclose," they need not allege affirmative deceptive conduct. Therefore, the Court finds that Plaintiffs have adequately alleged that fraudulent concealment has tolled the statute of limitations.

*Milstead v. Gen. Motors LLC*, No. 21-cv-06338-JST, 2023 WL 4410502, at *9 (N.D. Cal. July 6, 2023). This court adopts this interpretation of California law. Because, as noted above, plaintiffs have alleged that defendant had a duty to disclose the purported defect to plaintiffs, plaintiffs need not further allege affirmative deceptive conduct. Therefore, the court rejects defendant's argument in this regard. *See Sater*, 2015 WL 736723, at *9 (finding that the plaintiffs had sufficiently alleged fraudulent concealment by alleging that the defendant intentionally failed to disclose a defect and continued to manufacture and sell the defective vehicles); *Philips*, 2016 WL 1745948, at *14 (same).

Because plaintiffs have sufficiently alleged fraudulent concealment as a basis for tolling, the court finds that the statute of limitations was tolled until plaintiffs' alleged discovery of the defect. Plaintiffs allege that the Nelson plaintiffs discovered the defect on December 22, 2023, when the orange engine light on their vehicle first illuminated. (Doc. No. 33 at ¶ 17.) Because the Song-Beverly Act claim related to that vehicle was brought in the original complaint filed in this action on August 8, 2024 (Doc. No. 1 at 49), plaintiffs have brought their claim in a timely manner. *See Sonneveldt*, 2021 WL 4813753, at *11 ("California courts have held that the statute of limitations for an action for breach of warranty under the Song-Beverly Act is governed by . . .

1    section 2725 of the Uniform Commercial Code.  Under Section 2725, an action for breach of any

2    contract for sale must be commenced within four years after the cause of action has accrued.")

3    (internal quotation marks, citations, and alterations omitted).  Accordingly, the court will deny

4    defendant's motion to dismiss the Song-Beverly Act claim brought by the Nelson plaintiffs.

5        2.    California Breach of Implied Warranty (Claim 5)

6        Defendant argues that plaintiffs' claim for breach of implied warranty brought pursuant to

7    the California Commercial Code must be dismissed because plaintiffs have not sufficiently

8    alleged privity with defendant.  (Doc. No. 37-1 at 17–18.)  Plaintiffs "maintain there is 'an

9    exception to the privity requirement'" but concede that this court has previously rejected this

10   argument.  (Doc. No. 49 at 19.)  Plaintiffs therefore "withdraw their claim for breach of implied

11   warranty under the Commercial Code."  (*Id.*)  Accordingly, the court will grant defendant's

12   motion to dismiss the breach of implied warranty claim brought by the Nelson plaintiffs pursuant

13   to the California Commercial Code.

14       3.    Michigan Breach of Implied Warranty of Merchantability (Claim 8)

15       Defendant moves to dismiss plaintiff Butler's claim for breach of implied warranty

16   brought pursuant to Michigan law on the grounds that it too is barred by the applicable statute of

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23   /////

24   /////

25   /////

26   /////

27   /////

28

limitations.[6]  (Doc. No. 37-1 at 20–21.)  Specifically, defendant contends that the governing

statute of limitations requires a claim for breach of implied warranty under Michigan law to be

brought within four years of accrual and that such claims accrue at the time of sale.  (*Id.*)

Defendant then argues that tolling under a delayed discovery rule is not available for breach of

implied warranty claims under Michigan law.  (*Id.*)  Defendant further argues that plaintiffs'

allegations regarding plaintiff Butler's purchase of a vehicle fails to allege any required

affirmative act of misrepresentation sufficient for purposes of fraudulent concealment tolling of

the statute of limitations.  (*Id.*)  Plaintiffs respond that their allegations that plaintiff Butler

researched his vehicle before purchase, looked at a Ford window sticker on the vehicle, test drove

the vehicle, and spoke with a Ford representative about the car are a sufficient basis upon which

to assert an affirmative act of misrepresentation.  (Doc. No. 49 at 21–22.)  Accordingly, plaintiffs

contend that they have alleged fraudulent concealment which would toll the statute of limitations.

(*Id.*)

---

[6]  Defendant also moves to dismiss this claim on the grounds that the express warranty limited the length of the implied warranty of merchantability to be coextensive with the express warranty limits.  (Doc. No. 37-1 at 18–19.)  Under Michigan law, the implied warranty of merchantability can be limited to the duration of the express warranty through express provisions in the express warranty.  *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 627–28 (E.D. Mich. 2019); *see also Miller I*, 620 F. Supp. 3d at 1062 (finding that limitation of the implied warranty was permissible under Michigan law).  Nevertheless, there is an apparent divide in authority as to whether an implied warranty claim is sufficiently alleged even when the alleged repairs were sought after the expiration of the implied warranty if the purported defect was latent at the point of sale.  *See Roe v. Ford Motor Co.*, No. 18-cv-12528-LJM, 2021 WL 2529825, at *19 (E.D. Mich. June 21, 2021) (discussing the "mixed" nature of the case law); *see also Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1278 (E.D. Mich. 2021) ("Essentially, Plaintiffs allege that their trucks were 'never fit for their ordinary purpose,' so the question of whether a defect manifested within the warranty period does not arise."); *Chiulli v. Am. Honda Motor Co.*, 690 F. Supp. 3d 1038, 1055 (N.D. Cal. 2023) (finding that, under Michigan law, the plaintiffs' allegation that vehicles had a uniform, latent defect rendering those vehicles unmerchantable at time of purchase was sufficient to state breach of implied warranty even though repairs were sought after expiration of the warranty); *but see Ambrose v. Gen. Motors LLC*, No. 19-cv-13449-SFC, 2022 WL 3701946, at *12 (E.D. Mich. Aug. 26, 2022) (dismissing a breach of implied warranty claim under Michigan law where the plaintiffs alleged that the purchased vehicles were never fit for purpose because repairs were not sought until after expiration of express warranty); *In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d at 628 (same).  The court need not address this divide among courts because it concludes that plaintiffs' claim is otherwise barred by the applicable statute of limitations.

"Under Michigan law, for fraudulent concealment tolling to apply, the plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment and must prove that the defendant committed affirmative acts of misrepresentation that were designed to prevent subsequent discovery. Mere silence is not enough." *Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 522–23 (E.D. Mich. 2025) (internal citations and quotation marks omitted). Generally, misrepresentations in the form of "advertising materials touting the class vehicles' safety and reliability" are insufficient to constitute an affirmative misrepresentation. *Kiriacopoulos v. Gen. Motors LLC*, No. 22-cv-10785-MAG, 2023 WL 2789622, at *11 (E.D. Mich. Apr. 5, 2023); *see also Chapman*, 531 F. Supp. 3d at 1287 (finding that the statements alleged by the plaintiffs did not constitute actionable misrepresentation because they were merely puffery appearing in advertising).

Here, plaintiffs allege that before plaintiff Butler's purchase, he researched the vehicle on the internet through the Varsity Lincoln website, visited a Lincoln retail facility, reviewed the vehicle's window sticker, and test drove the vehicle with a representative from that Lincoln retail facility. (Doc. No. 33 at ¶ 25.) Plaintiffs do not allege any specific statement which was made to plaintiff Butler at this time, nor any statements about the vehicle he discovered during his research. Moreover, plaintiffs do not allege that any statements made "were designed to prevent discovery of an implied warranty claim." *Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d at 523. Indeed, plaintiffs appear to concede in their opposition to the pending motion to dismiss that the alleged misrepresentation consisted of a failure to disclose during "those interactions." (Doc. No. 49 at 21.) "Mere silence is insufficient" to justify tolling of the statute of limitations based upon fraudulent concealment under Michigan law. *Hennigan v. Gen. Elec. Co.*, No. 09-cv-11912-VAR, 2010 WL 3905770, at *6 (E.D. Mich. Sept. 29, 2010) (quoting *Sills v. Oaklan Gen. Hosp.*, 559 N.W.2d 348, 352 (1996)). Accordingly, the court concludes that plaintiffs have not sufficiently alleged fraudulent concealment and that plaintiff Butler's claim for breach of implied warranty brought under Michigan law is barred by the applicable statute of limitations. Therefore, the court will grant defendant's motion to dismiss that claim.

/////

1        4.        Florida Breach of the Implied Warranty of Merchantability (Claim 11)

2        Defendant moves to dismiss plaintiff Frades' breach of implied warranty claim brought

3   pursuant to Florida law on the basis that plaintiff Frades is not in privity with defendant as

4   required.[7]  (Doc. No. 37-1 at 17–18.)  Plaintiffs contend that Florida state courts recognize a

5   third-party beneficiary exception to this privity requirement which they argue has been

6   successfully alleged here.  (Doc. No. 49 at 19–20.)  Defendant, in reply, cites recent authority in

7   arguing that the third-party beneficiary exception and argues that it does not apply here.  (Doc.

8   No. 54 at 8–9.)

9        "Under Florida law, a plaintiff cannot recover economic losses for breach of implied

10  warranty in the absence of privity."  *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108,

11  1115–16 (S.D. Fla. 2019) (internal quotation marks omitted).  "The Florida Supreme Court has

12  held that implied-warranty claims require a contractual relationship to meet the privity

13  requirement.  Under Florida law, implied warranty claims cannot be maintained against a

14  manufacturer for a product that was purchased from a dealer."  *Hicks v. Bombardier Recreational*

15  *Prods. Inc.*, 684 F. Supp. 3d 1223, 1247 (S.D. Fla. 2023) (internal citations omitted).  "The

16  overwhelming weight of Florida law indicates that a plaintiff vehicle purchaser must purchase the

17  vehicle directly from the defendant in order to establish contractual privity to state a breach of

18  ───────────────

19  [7]  Defendant also moves for dismissal on the basis that plaintiffs' implied warranty claims are
    limited to the duration of the express warranty and that those claims are barred by the applicable
20  statute of limitations because the delayed discovery rule does not apply to breach of implied
    warranty claims.  (Doc. No. 37-1 at 18–21.)  The court need not consider these arguments
21  because it concludes that plaintiffs have failed to allege privity as required under Florida law.
    Nevertheless, just as with plaintiffs' claim for breach of implied warranty under Michigan law
22  addressed above, allegations that a latent defect was present at the time of sale may be a sufficient
    basis upon which to state a claim for breach of implied warranty under Florida law,
23  notwithstanding whether the defect "occurred" after the expiration of the express warranty.  *See*
    *Varner v. Domestic* [sic] *Corp.*, No. 16-cv-22482-RNS, 2017 WL 3730618, at *10 (S.D. Fla. Feb.
24  17, 2017).  Regarding defendant's statute of limitations argument, the court observes that the
    Supreme Court of Florida has stated that the delayed discovery rule applies to breach of implied
25  warranty claims in the personal injury context.  *Hearndon v. Graham*, 767 So. 2d 1179, 1186
    (2000) (citing *Creviston v. Gen. Motors Corp.*, 225 So. 2d 331 (1969)).  However, one court has
26  declined to extend this doctrine to apply to claims involving alleged breach of an implied
    warranty generally.  *See Mayor's Jewelers, Inc. v. Meyrowitz*, No. 12-cv-80055-JIC, 2012 WL
27  2344609, at *3 (S.D. Fla. June 20, 2012) (citing *Davis v. Monahan*, 832 So.2d 708, 709–10
    (2002)).

28

                                          30

1   implied warranty claim." *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1175 (C.D. Cal.

2   2022) (internal quotation marks omitted).  There does appear to be a split of authority between

3   federal courts as to whether a third-party beneficiary exception to privity exists under Florida law.

4   *Compare Valiente v. Unilever U.S., Inc.*, No. 22-cv-21507-JAL, 2022 WL 18587887, at *14 (S.D.

5   Fla. Dec. 8, 2022) ("Although some *federal* courts have applied a third-party beneficiary

6   exception to the privity requirement, the Court has found no *Florida* case applying a third-party

7   beneficiary exception to the privity requirement for a breach of implied warranty claim, and

8   Plaintiff has cited none.  The Court finds that under Florida law, there is no third-party

9   beneficiary exception to the privity requirement[.]") (internal citations omitted) (emphasis in

10  original), *with Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) ("The

11  Court finds more persuasive the decisions finding the third-party beneficiary exception viable in

12  Florida[.]").[8]

13      Courts that recognize the third-party beneficiary exception have found that a plaintiff can

14  establish privity with a manufacturer if they allege that:  (1) they purchased a product from an

15  authorized dealer which was an agent of the manufacturer; (2) the plaintiff was the intended

16  consumer of the vehicle; (3) the dealer was not the intended consumer; and (4) the warranty was

---

17  [8]  The court recognizes that another judge of this district has found that the third-party beneficiary
18  exception to privity is recognized under Florida law.  *Miller I*, 620 F. Supp. 3d at 1065.  In doing
    so, the court relied on the decisions in *Sanchez-Knutson v. Ford Motor Company*, 52 F. Supp. 3d
19  1223, 133–34 (S.D. Fla. 2014) and *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022,
    1032 (11th Cir. 2017).  *Id.*  Regarding the first decision, another district court has observed that
20  "*Sanchez-Knutson* recognized the third-party beneficiary exception by relying on a 1998 federal
    district court case from Louisiana, which in turn cited a 1989 Florida case arising under a
21  different context."  *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1024 (C.D.
    Cal. 2024).  Regarding the latter decision, "the Eleventh Circuit's analysis centered around the
22  direct negotiations between the parties.  Specifically, the Eleventh Circuit noted that a jury could
    find the plaintiff received 'a unique limited express warranty that was provided and specifically
23  negotiated as part of the purchase[.]'"  *Padilla*, 391 F. Supp. 3d at 1118 (quoting *Glob. Quest,
    LLC*, 849 F.3d at 1032); *see also Hicks*, 684 F. Supp. 3d at 1248 ("Plaintiffs' citation to *Global
24  Quest* omits the dispositive fact on which the court based its holding—the CEO of the defendant
25  manufacturer directly negotiated a warranty with the buyer.  Additionally, there was an open
    question of who issued the warranty among the three named defendants.").  Accordingly in the
26  undersigned's view, neither decision relied upon by the court in *Miller I* persuasively supports the
27  existence of a general third-party beneficiary exception under Florida law.  To the extent that
    *Global Quest* supports a particular exception to the privity requirement, plaintiffs do not allege
28  that plaintiff Frades had any direct contact with defendant or any of its agents.

31

1    intended to benefit the consumer.  *Weiss*, 418 F. Supp. 3d at 1183.  "Agency is a legal

2    relationship created by an express or implied agreement or by operation of law whereby the agent

3    is authorized to act for the principal."  *Nuwer v. FCA US, LLC*, No. 20-cv-60432-RS, 2023 WL

4    8724014, at *7 (S.D. Fla. Sept. 29, 2023) (internal quotation marks omitted) (quoting *Ocana v.*

5    *Ford Motor Co.*, 992 So. 2d 319, 325–27 (2008)).  Some of the "tell-tale signs of a principal-

6    agent relationship" include "the ability of the principal to hire, fire, or supervise dealership

7    employees or dealer ownership."  *Shelor v. Jaguar Land Rover N. Am. LLC*, No. 3:23-cv-00908-

8    WGY-PDB, 2025 WL 1580834, at *28 (M.D. Fla. Jan. 31, 2025) (internal quotation marks

9    omitted) (quoting *Ocana*, 992 So. 2d at 326).

10            Here, plaintiffs allege that plaintiff Frades purchased his vehicle from Gus Machado Ford.

11    (Doc. No. 33 at ¶ 34.)  There are no allegations in plaintiffs' FAC regarding the ownership of Gus

12    Machado Ford, whether defendant has the authority to direct Gus Machado Ford's staff, nor

13    whether defendant can hire, fire, or supervise any staff at Gus Machado Ford.  Plaintiffs allege in

14    conclusory fashion that at least some authorized Ford dealerships are agents of defendant, but this

15    allegation is an insufficient basis upon which to assert the existence of a principal-agent

16    relationship.  *See Shelor*, 2025 WL 1580834, at *28 ("[T]he term 'agent' is a legal conclusion not

17    considered under the plausibility standard."); *cf. Weiss*, 418 F. Supp. 3d at 1183 (finding that the

18    plaintiff's allegations that the defendant "does business in Florida through its authorized

19    dealerships" were sufficient to establish a principal-agent relationship).  Accordingly, even if the

20    court were to assume that there is a third-party beneficiary exception to the privity requirement

21    contrary to the weight of recent authority, plaintiffs have not sufficiently alleged that such an

22    exception applies here because they have not alleged a principal-agent relationship between

23    defendant and the dealership.  Therefore, the court will grant defendant's motion to dismiss

24    plaintiff Frades' breach of implied warranty claim brought pursuant to Florida law.

25    **D.      Federal Magnuson-Moss Warranty Act (Claims 12 and 13)**

26            Defendant moves to dismiss each of plaintiffs' claims brought under the Magnuson-Moss

27    Warranty Act ("MMWA") to the extent that those claims are based on what defendant contends

28    are insufficiently pled claims for breaches of express and implied warranties.  (Doc. No. 37-1 at

21–22.)  Plaintiffs bring their MMWA claims individually, not on behalf of any subclass.[9]  (Doc. No. 33 at ¶¶ 364, 377.)  Plaintiffs concede that claims brought under the MMWA are derivative of state law claims.  (Doc. No. 49 at 23); *see also Miller II*, 2024 WL 1344597, at *27 ("MMWA claims are derivative of state law claims of breach of express and implied warranties.") (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).  Accordingly, based on the plaintiffs' withdrawal of their claims for breach of express warranty, the court will grant defendant's motion to dismiss plaintiffs' MMWA claims which are derivative of their claims for breach of express warranty.

Based on the court's analysis and conclusions as to each of the warranty claims brought by plaintiffs, the court concludes that plaintiffs Butler and Frades have insufficiently alleged a breach of implied warranty claim and have thus failed to sufficiently allege their derivative MMWA claims.  Conversely, the Nelson plaintiffs have sufficiently alleged a breach of implied warranty claim pursuant to California's Song-Beverly Act and have therefore sufficiently alleged a derivative MMWA claim.  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1340 (C.D. Cal. 2013) (denying motion to dismiss MMWA claim premised on a Song-Beverly Act claim).

**E.    Unjust Enrichment (Claim 15)**

Defendant moves to dismiss plaintiffs' individual claims for unjust enrichment on the basis that there was a binding express contract which defined the parties' rights and therefore a cognizable unjust enrichment claim cannot be stated.[10]  (Doc. No. 37-1 at 31–32.)  Plaintiffs argue that defendant received an unjust benefit by being paid for repairs performed after the

---

[9]  Though the MMWA imposes a jurisdictional numerosity requirement, this requirement  applies only to class action claims brought pursuant to the MMWA and not to individual claims.  *Boldt v. Caesarstone USA, Inc.*, 760 F. Supp. 3d 1016, 1022 (C.D. Cal. 2024); *see also Chiulli*, 690 F. Supp. 3d at 1049 (finding that the MMWA permits individual actions without a jurisdictional numerosity requirement).

[10]  Defendant also moves to dismiss plaintiffs' unjust enrichment claim brought on behalf of a nationwide class.  (Doc. No. 37-1 at 32.)  In their opposition, plaintiffs withdraw the unjust enrichment nationwide class claim but do not withdraw their individual unjust enrichment claims.  (Doc. No. 49 at 25.)

1   purchase of their vehicles.  (Doc. No. 49 at 24–25.)  Defendant replies that plaintiffs have not

2   alleged any benefit to defendant because plaintiffs have merely alleged that they paid for repairs

3   from dealerships, not that they paid any money to defendant directly.  (Doc. No. 54 at 20–21.)

4        "Unjust enrichment cannot lie where a valid express contract covering the same subject

5   matter exists between the parties."  *Glenn v. Hyundai Motor Am.*, No. 15-cv-02052-DOC-KES,

6   2016 WL 7507766, at *5 (C.D. Cal. Nov. 21, 2016) (internal quotation marks and alterations

7   omitted).  "Thus, where there is an existing express contract, a party may only bring a claim for

8   restitution [through a quasi-contract action for unjust enrichment] if the contract is unenforceable,

9   procured by fraud, or otherwise inapplicable."  *Echo & Rig Sacramento, LLC v. AmGuard Ins.*

10  *Co.*, 698 F. Supp. 3d 1210, 1219 (E.D. Cal. 2023).  Florida and Michigan law similarly prevent a

11  plaintiff from recovering for unjust enrichment "where a valid, express contract governing the

12  subject matter of the dispute exists."  *In re Sony Gaming Networks & Customer Data Sec. Breach*

13  *Litig.*, 996 F. Supp. 2d 942, 984 (S.D. Cal. 2014) (collecting cases) (internal quotation marks

14  omitted).

15       Plaintiffs argue that their unjust enrichment claims are permissible because they have

16  alleged that they paid for repairs while defendant continued to actively conceal a design defect.

17  (Doc. No. 49 at 24–25.)  In support of this argument, they cite the decision in *Wildin v. FCA US*

18  *LLC*, No. 3:17-cv-02594-GPC-MDD, 2018 WL 3032986, at *8 (S.D. Cal. June 19, 2018), in

19  which the court found that the plaintiffs had alleged that the defendant had unjustly received a

20  benefit outside the scope of a warranty by receiving money for repairs caused by a design defect.

21  (Doc. No. 49 at 25); *see also Wildin*, 2018 WL 3032986, at *8.  However, plaintiffs have not

22  alleged that they paid defendant for repairs, but only that they paid certain dealerships.  (Doc. No.

23  33 at ¶¶ 18, 28, 38–40.)  Accordingly, plaintiffs have not alleged that defendant received a benefit

24  in the form of payment for repairs.  *See Miller I*, 620 F. Supp. 3d at 1078 ("Nor can Plaintiffs

25  /////

26  /////

27  /////

28  /////

1  base their unjust enrichment claims on post-sale repairs at dealerships[.]").[11]  Therefore, the court

2  will grant defendant's motion to dismiss plaintiffs' unjust enrichment claims.

3  **F.    Nationwide Claim (Claim 14)**

4          Defendant moves to strike or dismiss plaintiffs' nationwide claim for fraudulent

5  concealment on the grounds that plaintiffs "lack standing to proceed on generically pled

6  nationwide claims based on any single state's law." (Doc. No. 37-1 at 32.)  In particular,

7  defendant urges the court to follow the decision in *Miller I*, in which the district court determined

8  that the plaintiffs lacked standing to maintain a nationwide class where there were only 24 named

9  class representatives spanning 15 states.  (*Id.*); *see also Miller I*, 620 F. Supp. 3d at 1077.

10  Plaintiffs argue that it is premature to strike nationwide class allegations prior to discovery.  (Doc.

11  No. 49 at 25–26.)  Plaintiffs attempt to distinguish *Miller I* by asserting that "it did not concern

12  common-law fraud claims." (*Id.* at 26.)  The court finds this argument to be unpersuasive.  In

13  *Miller I* the district court explicitly addressed plaintiffs' "fraud by concealment" claim brought

14  "on behalf of a putative nationwide class." *Miller I*, 620 F. Supp. 3d at 1055 (describing the

15  nationwide claims).  As that court stated:

16              The Ninth Circuit has held, under California's choice of law rules,
                "each class member's consumer protection claim should be governed
17              by the consumer protection laws of the jurisdiction in which the
                transaction took place." *Mazza v. Am. Honda Motor Co.*, 666 F.3d
18              581, 594 (9th Cir. 2012), *overruled on other grounds by Olean
                Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31
19              F.4th 651 (9th Cir. 2022).  "In analogous cases, *Mazza* is not only
                relevant but controlling, even at the pleading stage." *Cover v.
20              Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5
                (N.D. Cal. Feb. 10, 2016) (citations and quotations omitted).
21

22                                          * * *

23              In the instant matter, the Court joins the several other courts in this
                circuit which have opted to require Plaintiffs to present named class
24              representatives who possess individual standing to assert each state
                law's claims against Defendant.  *See In re Carrier IQ, Inc.*, 78 F.

25  ─────────────────────────
    [11]  Plaintiffs also argue that their unjust enrichment claims should not be dismissed merely
26  because those claims are duplicative of their breach of warranty claims.  (Doc. No. 49 at 24–25.)
    The argument misses the mark.  As another judge of this court has observed under similar
27  circumstances:  "Here, though Plaintiffs' pleaded unjust enrichment [claims] in the alternative,
    the claims are not dismissed for being superfluous, but rather because of the existence of express
28  agreements." *Miller I*, 620 F. Supp. 3d at 1078 n.12.

                                          35

1      Supp. 3d [1051, 1075 (N.D. Cal. 2015)] (finding that named
       plaintiffs did not have standing to assert claims from states in which
2      they did not reside or make a relevant purchase).

3   *Miller I*, 620 F. Supp. 3d at 1076–77.  The undersigned finds this reasoning persuasive and will

4   adopt it.  Here, plaintiffs have identified only four named representatives across three states.

5   (Doc. No. 33 at 4–9.)  This is not sufficient and the court concludes that plaintiffs lack standing to

6   maintain a nationwide class action claim.  Accordingly, the court will grant defendant's motion to

7   dismiss plaintiffs' nationwide claim for fraudulent concealment.

8   **G.      Leave to Amend**

9          Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

10  P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

11  amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

12  Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

13  deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

14  leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Dismissal without leave to amend is

15  proper if it is clear that "the complaint could not be saved by any amendment."  *Intri-Plex Techs.*

16  *v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citation omitted); *see also Ascon Props., Inc.*

17  *v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the

18  amendment of the complaint . . . constitutes an exercise in futility . . . .").  A district court "should

19  grant leave to amend even if no request to amend the pleading was made, unless it determines that

20  the pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and*

21  *Liehe, Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

22         In their opposition to the pending motion, plaintiffs request leave to amend.  (Doc. No. 49

23  at 26.)  The court observes that several of the pleading deficiencies identified in this order may

24  conceivably be cured by additional and more detailed allegations.  Therefore, the court will grant

25  plaintiffs leave to amend their FAC.  *See Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032,

26  1041 (9th Cir. 2015) ("It is black-letter law that a district court must give plaintiffs at least one

27  chance to amend a deficient complaint, absent a clear showing that amendment would be futile.").

28  /////

36

**CONCLUSION**

For the reasons above,

1.  Defendant's motion to dismiss (Doc. No. 37) is GRANTED in part and DENIED in part as follows:

2.  Defendant's motion to dismiss is GRANTED as to the following claims:

   a. Plaintiff Butler's Michigan Consumer Protection Law claim (Claim 6);

   b. Plaintiff Butler's breach of implied warranty claim (Claim 8);

   c. Plaintiff Frades' FDUTPA claim (Claim 9);

   d. Plaintiff Frades' breach of implied warranty claim (Claim 11);

   e. Plaintiffs' MMWA claims for breach of express warranty (Claim 12)

   f. Plaintiffs Frades' and Butler's MMWA claims for breach of implied warranty (Claim 13);

   g. Plaintiffs' nationwide fraudulent concealment claim (Claim 14);

   h. Plaintiffs' individual unjust enrichment claims (Claim 15);

3.  Defendant's motion to dismiss is DENIED as to the following claims:

   a. The Nelson plaintiffs' CLRA claim (Claim 1);

   b. The Nelson plaintiffs' UCL claim (Claim 2);

   c. The Nelson plaintiffs' Song-Beverly Act claim (Claim 4);

   d. The Nelson plaintiffs' MMWA claim for breach of implied warranty (Claim 13);

4.  The following claims are DISMISSED without leave to amend as having been withdrawn by plaintiffs:

   a. The Nelson plaintiffs' breach of express warranty claim (Claim 3);

   b. The Nelson plaintiffs' breach of implied warranty claim brought pursuant to the California Commercial Code (Claim 5);

   c. Plaintiff Butler's breach of express warranty claim (Claim 7);

   d. Plaintiff Frades' breach of express warranty claim (Claim 10);

   e. Plaintiffs' nationwide class unjust enrichment claim (Claim 15);

5.    Plaintiffs shall file their second amended complaint, or alternatively, a notice of their intent not to do so, within twenty-one (21) days from the date of service of this order;

6.    If plaintiffs file a notice of intent not to file a second amended complaint, then defendant shall file an answer as to the claims found to be cognizable in this order within twenty-one (21) days of service of that notice.

IT IS SO ORDERED.

Dated:   **September 4, 2025**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE